CATHERINE WOLSCHEID, ADMINISTRATRIX, ETC., v. NICHOLAS THOME.

*Lease of sheep—Negligence—Action by administratrix—Pleading— Amendment of declaration—Evidence—Expert testimony.*

1. An amendment on the trial of a declaration in which the plaintiff is *described* as administratrix, but which fails to show *definitely* whether she is suing in her personal or representative capacity, by alleging the issuance to her of letters of administration, is in the furtherance of justice, and within the discretion of the trial court under the statute of amendments.

2. A declaration in which the plaintiff is described as administratrix, and which alleges the issuance to her of letters of administration, and counts upon a contract made by defendant with the intestate for the care and return of sheep received by the defendant, and alleges its breach, with resultant damage to the intestate or his legal representative, and a failure to deliver the wool and sheep belonging to the intestate, under the contract, to the plaintiff as *such* administratrix, to her damage, is sufficient to show a cause of action in the plaintiff in her representative character, and the contract is admissible in evidence thereunder.

3. In a case involving the proper care of sheep let to the defendant for a rental payable in wool and a share of their increase, it is competent for expert sheep-growers to examine the land where the sheep were kept, and give their opinion as to its being a proper place to keep sheep in the winter-time; but it is not competent for such witnesses to testify that in the condition in which they found the sheep-sheds they were not suitable to keep sheep in, in the absence of evidence that they were in the same con-

dition as when the sheep were housed therein by defendant, which was several years prior to their examination.

4. In a suit by an administrator to recover damages for the neglect of the defendant to properly house and care for sheep let to him by the intestate under a contract calling for their return unless they died without the defendant's negligence, it is competent to show that the intestate examined the sheds in which the sheep were to be kept, and thought them good ones for that purpose, as bearing upon their fitness; but such fact will not estop the administrator from showing their *unfitness*, and that it was negligence on the part of the defendant to so keep them, and that they died because of the damp and wet condition of said sheds.

5. In such a case a request by the defendant for an instruction to the jury that, in order to find a verdict against the defendant on account of the improper location of the sheds, they must be satisfied from the evidence that men of ordinary skill and prudence in keeping sheep would not have located the sheds where defendant did, is proper, and should be granted.

Error to Clinton. (Smith, J.) Argued June 28, 1889. Decided July 11, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts and points of counsel *passed* upon by the Court, are stated in the opinion.

*Fedewa & Lyon,* for appellant.

*Daboll & Brunson* and *H. & H. E. Walbridge,* for plaintiff.

MORSE, J. The plaintiff brought suit in the circuit court for the county of Clinton, as administratrix of her husband, against the defendant, alleging that on or about the twenty-third day of September, 1881, at the township of Westphalia, in said county, the said defendant received from her said husband 60 sheep, under and by virtue of the following written agreement between the parties, to wit:

" This agreement made and entered into by and between Nicholas Wolscheid, of Portland, Ionia county, Michigan, of the first part, and Nicholas Thome, of Westphalia, Clinton

county, Michigan, of the second part, witnesseth, that the party of the first part, for and in consideration of the rents and covenants herein specified, does hereby let and lease to the said party of the second part sixty sheep (being ewes), for the term of three years, from and after the twenty-third day of September, 1881, and to return the same number and like sheep at the expiration of the said term as follows :

"Said party of the second part agrees to pay said party of the first part one-half of all the wool sheared off from said sheep at the usual shearing time, each and every year during said term; and also one-half of all the increase in lambs from said sheep during said term, each and every fall.

"It is mutually agreed between the parties that, in case any sheep shall die without the negligence of said second party, said first party shall lose the same; and also agreed that, in case any of said sheep shall be killed by a dog or dogs, said first party shall draw the full benefit therefor from the dog fund, as the law provides.

"Said party of the second part agrees to feed, pasture, and keep said sheep in the usual and ordinary way as sheep are kept generally, to maintain in good condition, during said term.

"In witness whereof we have hereunto set our hands and seals this twenty-third day of November, 1881.

"NICHOLAS WOLSCHEID. [L. S.]
"NICHOLAS THOME. [L. S.]
"In presence of PETER PETSCH."

She further alleges that in the fall of 1882 there was a large number of lambs, to wit, 70, the increase of said sheep, and a large amount of wool; that the wool was delivered in accordance with the contract, and a further agreement made that Thome should keep the lambs, 35 of which belonged to the said Nicholas Wolscheid under the terms of the said written contract, so that the said Thome then had 95 sheep under said written agreement; and that while the said defendant was so possessed of said 95 sheep,—

"By his negligence and ill-usage, and want of care and caution, such as he was by his contract bound to give and bestow about the care of the said sheep, depriving them of the necessary food, water, and shelter, and caused and per-

mitted said sheep to become poor, sick, and emaciated so that large numbers of them died;"—

So that in the fall of 1883 the said Thome, by reason of the premises, had failed to produce the natural increase, and natural product of wool, from the said 95 sheep, which would have been yielded had they been properly cared for, and thereby neglected to deliver the same, to the great damage and loss of the said Nicholas Wolscheid or his legal representative, to wit, $300.

That he refused to deliver to the plaintiff, in her capacity as administratrix, the said 95 sheep, or 95 other sheep like them, on her demand, since the twenty-third day of September, 1884; and also refused to deliver the increase and the wool according to the contract, to her damage $300. To this special declaration the common counts were added.

The defendant pleaded the general issue.

On the issue thus made a trial was had before a jury, which resulted in a verdict and judgment for the plaintiff in the sum of $280. Defendant brings error.

The first objection to the proceedings is that the court erred in receiving the written contract in evidence under the plaintiff's declaration.

The declaration, as first filed, did not allege the death of Nicholas Wolscheid, or the appointment of the plaintiff as administratrix, and did not make profert of the letters of administration. It commenced, however, as follows:

"Catherine Wolscheid, administratrix with the will annexed of the estate of Nicholas Wolscheid, deceased, plaintiff in this cause, by Daboll & Brunson and H. & H. E. Walbridge, her attorneys, complains of Nicholas Thome, the defendant in this cause," etc.

When the contract was offered, it being the first evidence produced by the plaintiff, objection was at once made to its introduction, on the ground that it did not appear definitely from the declaration whether Mrs. Wolscheid was suing in

her individual capacity or as administratrix; also that the declaration did not state that administration had ever been granted to her. The declaration was then amended so that it alleged the issuing of letters of administration to her. Defendant's counsel excepted, and then moved to strike out the first count in the declaration, for the reason that it did not state whether the injury resulted to the deceased or his present representatives. The motion was denied.

The court committed no error in amending the declaration on the trial, as such amendment could not have been a surprise to the defendant, or prejudiced the merits of his case in any way. No continuance was asked on account of such amendment, and the defendant was in as good a situation for trial as before, as far as the record shows. It was an amendment of a formal defect, and in the furtherance of justice, and within the discretion and power of the court under the statute of amendments.

While the first count of the declaration is not as explicit as it might have been in its allegations, we think that, as amended in court upon the trial, it is sufficient to show a cause of action in the plaintiff as administratrix of her husband, and that the contract in writing was admissible under it.

Two witnesses, Eldridge and Caruss, examined the condition of the sheep-sheds, where the sheep were kept winters, and testified in relation thereto. Caruss made his examination in October, 1888, and Eldridge in November of the same year. It had rained hard a day or two before Caruss visited the sheds.

Previous to the examination of these two witnesses, Peter Petsch testified on behalf of the plaintiff as to the location of the sheds and the character of the soil where they were situated. He saw the sheds in 1881, when they were in process of erection. The place where the sheds stand is wet most of the time, he should judge. When he saw the sheds,

in the fall of 1881, the ground was muddy; could hardly get to the north and west sides.

"There wasn't any running water or pools there, but it was muddy; lots of mud."

Has been there since occasionally. Did not see much change there until about two years before the trial, which was in January, 1889. The soil was mucky, and "the mud was about the same kind of mud that you see in a barn-yard generally, where cattle are running." There was no manure then in the sheds. When he was there in 1888, with Eldridge, there was inside of the sheds a pile of manure quite high. He never saw the sheds when the sheep were being kept in them.

Eldridge was a farmer and sheep-grower, living in Bengal, Clinton county. The defense objected to his testifying to the condition of the sheds in November, 1888, on the ground that it already appeared that the sheds then had a foot or more of manure in them, while there was none when the sheep were kept in them. But he was permitted to state their appearance when he was there, and whether or not it was a proper place to keep sheep as he saw them.

Mr. Caruss was also a farmer, and extensive sheep-grower, residing in the township of Essex, Clinton county. He was also permitted, against the objection of the defendant, to state the condition of the sheds when he saw them in October, 1888, and to testify that it was not a suitable place to keep sheep, and that he did not think it possible that sheep could be kept there in the condition that he found it, and that it "would be a bad place to keep sheep in without straw, or in some shape that it could be made dry." The inside was well filled with manure when he saw the sheds.

Some of the testimony given by Eldridge and Caruss was erroneously admitted. It was not proper for them to state the condition of the sheds when they saw them, and testify

that in that condition they were not suitable to keep sheep in. They were testifying as experts, and as such experts should have been confined to the condition of the sheds at the time the sheep were kept in them.

The sheds and the ground around them might have been muddy in October or November, 1888, and water might have stood in the sheds when Caruss was there, and not at any time when the sheep were kept there, which was in the winter-time, from five to seven years before his visit to the ground. It was proper for them to go there and examine the lay of the land, and the character of the soil, and as experts, if they were shown to be such,—and they undoubtedly were, being farmers and extensive growers of sheep,—to give their opinion as to whether or not it was a proper place to keep sheep in the winter-time; but it was not competent for them to state as to the condition of the sheds inside, unless it was shown, as it was not, that the condition was the same when the sheep were kept there, and then to state that, as they saw it, it was not a fit place to keep sheep in.

The testimony on behalf of the defendant was to the effect that the sheds were always dry, and not muddy, when the sheep were kept there, and no manure left in them except what the sheep made, which was taken out before the sheep were put in again the next winter. One of the principal items of the negligence of the defendant, as claimed by plaintiff, was the keeping of the sheep in sheds the ground of which was damp, wet, and muddy, causing consumption. It will thus be seen that the wet and muddy condition of the ground in these sheds in the fall of 1888, was permitted to go to the jury to show that such condition was negligence in the defendant in 1881, 1882, and 1883, when the sheep were kept there in the winters of those years, when there was no evidence of any such condition at any time when the sheep were in the sheds. It was prejudicial to defendant.

The court did not err in ruling that it was not proper for the defendant to state what he told Lewis Willey about the sickness of the sheep, or what Willey said to him.

We do not think the plaintiff would be estopped from showing that the sheep-sheds were not a proper place to keep the sheep, and that it was negligence for the defendant to so keep them, and that they died from the effects of the damp and wet condition of such sheds, because the husband, when he took the sheep there, thought the sheds were good ones, and a nice place to keep sheep.

This fact would be admissible, as having a bearing upon the question whether the sheds were fit or not.

But if the sheds were not such as an ordinarily prudent farmer would keep his sheep in, and such keeping would be negligence, the fact that Wolscheid, when he took the sheep there, thought the place was all right, and said so, would not excuse the negligence of defendant.

His contract was that, unless the sheep died without his negligence, he would return them, or the same number in kind, at the end of the term for which he received them.

The defendant's counsel requested the court to instruct the jury by his tenth request that, in order to give a verdict against the defendant on account of the improper location of the sheds, they must be satisfied from the evidence that men of ordinary skill and prudence in keeping sheep would not have located the sheds where he did.

We see no reasons why this request should not have been given in the language requested.

The only reference made to the subject by the court is the statement that it was the duty of Thome, under the contract, to use reasonable and ordinary care in caring for the sheep, and that it devolved upon him to use reasonable care and diligence in caring for the sheep; the contract reading that he was to treat them in the usual and ordinary way, and main-

tain them in good condition. And also, when taking up defendant's requests, the court said:

"The tenth I do not give; I think I have covered that point."

As the case must go back for a new trial, some of the errors alleged become unimportant, as they are not likely to arise again, especially the lack of proof as to the agreement as to the lambs dropped in 1882, and the mistake of the court as to the delivery of the wool in 1882.

The judgment of the court below is reversed, and a new trial granted, with costs of this Court to defendant.

CHAMPLIN and CAMPBELL, JJ., concurred. SHERWOQD, C. J., and LONG, J., did not sit.